IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| v. | § | NO.: EP-10-CR-00374(1)-PRM |
| | § | |
| OSWALDO KUCHLE-LOPEZ | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION
AND MEMORANDUM BRIEF IN SUPPORT THEREOF**

TO THE HONORABLE PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE, WESTERN DISTRICT OF TEXAS:

Comes now the Defendant, OSWALDO KUCHLE-LOPEZ, ("Kuchle") who by and through his attorney of record, JOSEPH (SIB) ABRAHAM, JR., and files the following Motion to Revoke Order of Detention (Appeal) and Memorandum Brief in Support Thereof in the above entitled and numbered cause and would respectfully show as follows:

**I.**

**Overview of Relief Sought**

This Motion seeks the revocation of the Order detaining the Defendant without bail pending trial, pursuant to 18 U.S.C. §3145(b) entered by United States Magistrate Judge Norbert Garney on the 12th day of March, 2010 (see Exhibit "A" attached hereto). The Defendant seeks an Order from this Honorable Court granting him conditions of release. Moreover, the

Defendant asserts that there is a combination of conditions which will reasonably assure his appearance for all court proceedings in this case.

## I.

### Legal Standard

The Bail Reform Act of 1984 ("the Act"), 18 U.S.C. §3141, et. seq., codifies a judicial officer's authority to detain a criminal defendant pending trial and delineates the procedures and standards applicable to pretrial detention. The Act provides, inter alia, that the pretrial detention[1] of a defendant is permissible only if a judicial officer conducts a detention hearing[2] and "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community; 18 U.S.C. §3142(e). See also: United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989). Pursuant to 18 U.S.C. §3145(b), a defendant subject to pretrial detention may seek the prompt review of his detention order. "If a person is ordered detained by a magistrate judge ... the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. §3145(B). When reviewing "a motion to revoke ... a magistrate's pretrial detention order, the [district] court acts de novo and makes an independent determination of the

---

[1] The Act essentially provides a judicial officer with four options when determining to release or detain a defendant prior to trial. See United States v. Westbrook, 780 F.2d 1185, 1187 (5th Cir. 1986) (citing 18 U.S.C. §3142(a)).

[2] A detention hearing may only be held in the first place under certain defined circumstances. See 18 U.S.C. §3142(f). Such a hearing may be held in cases where a defendant presents a serious risk of flight, as well as in cases involving qualifying violations of the Controlled Substances Act. Id. At the hearing, the judicial officer must determine whether conditions of release will reasonably assure a defendant's appearance and the safety of any other individual or the community. Id. See United States v. Byrd., 969 F.2d 106, 109 (5th Cir. 1992) (stating "[d]etention can be ordered, therefore, only 'in a case that involves' one of the six circumstances listed in [18 U.S.C. §3142](f), and in which the judicial officer finds, after a hearing, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"). Importantly, "the Bail Reform Act does not authorize detention on the sole ground that a person may be a danger to the community" or a flight risk. United States v. Reinhart, 975 F. Supp. 834, 836 (W.D. La 1997) (citing Byrd,

proper pretrial detention or conditions for release." United States v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985). The district court's de novo review does not, however, necessarily mandate a de novo hearing. United States v. King, 849 F.2d 485, 489-90 (11th Cir. 1988). The district court "may take additional evidence and may also utilize the transcript and record of the earlier detention hearing as the basis for findings of fact. United States v. Boado, 835 F. Supp. 920, 921 (E.D. Tex. 1993) (emphasis added). See also United States v. Kyle, 49 F. Supp. 2d 526, 527 (W.D. Tex. 1999) (stating new evidentiary hearing not required and "court is entitled to rely on the evidence introduced before the Magistrate Judge") (citations omitted). If the court "determines that additional evidence is necessary or that factual issues remain unresolved the court may conduct an evidentiary hearing for these purposes." King, 849 F.2d at 490. "in this instance, the district court must enter written findings and written reasons supporting its decision." Id. However, if the court "concludes that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefore and then explicitly adopt the magistrate's pretrial detention order.[3] Id. at 491.

### III.

### Analysis

Generally speaking, "[i]f, after [conducting] a hearing pursuant the provisions of [the Act], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person required and the safety of any other person and the community," a defendant may be subject to pretrial detention. 18 U.S.C. §3142(e). The Act

---

969 F.2d at 110). A finding of detention must first be premised on one of the six circumstances listed at 18 U.S.C. §3142(f).

[3] In King, the eleventh Circuit thoroughly described the district court's task on a motion to revoke and its discussion appears to be more detailed and comprehensive than that of the other Circuits. King, therefore, provides useful on the reviewing Court may consider evidence presented before the Magistrate Judge.

specifically provides that detention is available where there is "a serious risk that [the defendant] will flee." 18 U.S.C. §3142(f)(2)(A). **SINCE THERE ARE NO ALLEGATIONS IN THE INDICTMENT ALLEGING VIOLATIONS OF THE CONTROLLED SUBSTANCES ACT (21 U.S.C. §801, ET. SEQ.) OR CONTROLLED SUBSTANCES IMPORT AND EXPORT (21 U.S.C. §951, ET. SEQ.) OR A VIOLATION INVOLVING A CRIME OF VIOLENCE, THERE IS NO "REBUTTABLE PRESUMPTION" THAT EXISTS [IN FAVOR OF DETENTION] AND TO WHICH THE DEFENDANT MUST SUCCESSFULLY REBUT. United States v. Reuben, 974 F.2D 580, 586 (5TH CIR. 1992).** Consequently, the Court must conclude that a preponderance of the evidence indicates that a condition of release or combination of conditions will not reasonably assure Defendant's future appearance as required in order to properly detain a defendant. United States v. McConnell, 842 F.2d 105, 110 (5th Cir. 1988) (stating "[i]t is sufficient for the court to find by a preponderance of evidence that the defendant poses a serious flight risk" (citations omitted).

Pursuant to 18 U.S.C. §3142(g), the factors to be considered at a detention hearing, and ultimately in deciding whether release or detention is to be ordered, include the following:

1. The nature of the offense, including whether the offense is violent or involves a narcotic drug.
2. Weight of the evidence.
3. The history of the defendant and his character.
4. Mental and physical or medical condition.
5. Financial ties.
6. Family ties.
7. Community ties.

8. Employment.

9. Criminal History.

10. Record of court appearances.

11. Probation or parole status.

12. Nature of danger posed to the community if the defendant is released.

13. Amount of time before trial commences. (This is a complex case).

In addition, the defendant must only show that conditions of release will <u>reasonably assure</u> his appearance or the safety of the community – conditions of release need not <u>guarantee</u> safety or presence. <u>United States v. Fortna</u>, 243, 249 (5th Cir. 1985); <u>United States v. Orta</u>, 760 F.2d 887 (8th Cir. 1985) (<u>en banc</u>).

## IV.

## Magistrate Judge Garney's Detention Order

Magistrate Court Judge Garney appeared to struggle with his decision, at various times[4], on whether to grant the Government's motion to detain the Defendant pending trial (1TR 75-76; 78; 2TR 12) before ultimately entering an Order detaining Kuchle based on a risk of flight (Exhibit "A"). Magistrate Judge Garney's Order appeared to focus on the Defendant; only having recently "lived in the United States; still having strong familial and financial ties to a foreign country; the weight of the evidence, and, if convicted, the Defendant would likely be deported back to Mexico.

The Defendant contends that the evidence demonstrates that there <u>is</u> a combination of conditions which will reasonably assure his appearance at future court appearances. Specifically, the Defendant is prepared to post a $100,000.00 corporate surety bond, an additional

5

$250,000.00 in cash or assets which would be posted with funds contributed by twenty-three (23) different individuals (see Exhibit "B" attached hereto); the assets of the Defendant's restaurant (Aroma) which total approximately $400,000.00, and an electronic monitoring. The most significant of all these financial conditions involves the twenty-three (23) individuals who have galvanized support of Kuchle, not only with each individual's financial resources, but with their attestations as to his good character (significant evidence which negates the existence of flight evidence). Contrary to assertions made by the Government, these twenty-three (23) individuals are not pledging these funds because "they know the Defendant will repay them if he absconds", but because they firmly and unequivocally believe in the character and integrity of the Defendant. This is the foundation on which these individuals have based each of their respective decisions to pledge what cash resources they have towards a bond for Mr. Kuchle. When combined with their economic contributions, $400,000.00 in assets belonging to Defendant's restaurant, an additional $100,000.00 corporate surety bond[5] and electronic monitoring, conditions do exist which will reasonably assure the Defendant's appearance.

In the case at bar, the Defendant would also proffer to the Court in connection with the factors set forth in §3142(g), the following:

1. <u>Nature of the Offense</u>. While Mr. Kuchle acknowledges that the charges levied against him are serious in nature, there is no indication that he presents a danger to the community or any other person. Furthermore, the preventive detention provisions should not be invoked to safeguard against harms unrelated to the

---

[4] The transcript of the testimony heard at the March 9, 2010 hearing is referred to as "1TR" with referenced to page(s) to the right of "1TR". The transcript of the testimony heard at the March 12, 2010 hearing is referred to as "2TR" with reference to pages to the right of "2TR".

[5] These amounts would constitute $750,000.00 of secured assets, certainly a sizeable bond for a person who, if convicted, realistically faces a sentence of approximately 3 to 4 years and certainly less if a plea agreement is entered into.

federal prosecution that has given rise to the bail hearing. United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

The instant charge is of a non-violent nature and clearly does not involve violations of any of the Controlled Substances Act(s). Likewise there is no reason to believe that Mr. Kuchle will engage in any violent or dangerous conduct at any point in the future.

2. Weight of the Evidence. The weight of the evidence is only one of many factors to be considered in determining flight or danger, and a federal circuit has found that it is the least important factor. United States v. Motamedi, 767 F. 2d. 1403 (9th Cir. 1985). In most every federal case the Defendant is the underdog.

On February 10, 2010, a federal grand jury sitting in the El Paso Division of the Western District of Texas returned a six (6) count indictment against Kuchle charging him with: Count One – Conspiracy to Commit Wire Fraud, commencing October, 2003 and continuing to August 23, 2007, and in violation of 18 U.S.C. §§1343, 1344 and 1349); Count Two – Wire Fraud, during the periods of October, 2003 and through August, 2007, and in violation of 18 U.S.C. §1343; Count Three – Bank Fraud, during the same time periods alleged in Counts One and Two, and, in violation of 18 U.S.C. §1344; Count Four – False Statements to Obtain Credit, during the same October, 2003 through August, 2007, time periods, and, in violation of 18 U.S.C. §1014; Count Five – Conspiracy to Commit Wire Fraud, commencing in May, 2006 and continuing to October, 2007, and in violation of 18 U.S.C. §§1343 and 1349; and Count Six –

Wire Fraud, allegedly committed during the same time periods as alleged in Counts Five, and in violation of 18 U.S.C. §1343.

According to the testimony of FBI Special Agent James Griego, Jr. ("Griego"), this case stems from two (2) loans made to the Defendant, which were guaranteed by the Export-Import Bank of the United States ("Ex-Im"). Ex-Im is basically the export credit agency of the United States Government which provides guarantees or insurance policies to commercial lenders in the United States that provide loans to foreign borrowers (1TR 4-6). In 2004, Toronto Dominion Bank, with guarantees made by Ex-Im Bank, loaned Kuchle approximately 1.9 million dollars. This loan, solicited and brokered by Eduardo Padilla and Manny Varela of Texon, is intended to reimburse the borrower, who has purchased equipment or goods manufactured in the United States, and to be used in Mexico for development of property in Mexico (1TR 6-9; 28-29).

Mr. Kuchle made payments of over $1,000,000.00 before defaulting (see Exhibit "C"). The primary reason behind Kuchle's default was the same that many people, in the United States and other countries, have experienced – a sharp decline in the economy. Nevertheless, Kuchle, as recently as January of this year, was still engaged in communications with Ex-Im's collection facility in Mexico to satisfy these loans (1TR 29-32).

The second loan (in 2006) was made by Chancery Export out of Baltimore, Maryland and, of course, was guaranteed by Ex-Im Bank (1TR 5; 11-12). The loan was made to Santa Marcela, a ranch owned by the Kuchle Family and the Defendant (1TR 4). This loan was solicited and brokered by Jaime

Rodriguez (1TR 31-32). This money was sent to a bank account belonging to an alleged employee of Kuchle – Ms. Venzor (1TR 51) who then obtained a cashier's check (1.2 million) and distributed it to Arnoldo Carreon-Renteria (1TR 40-41). This occurred in 2006. Mr. Carreon-Renteria was murdered in 2008. The Government alleges that Mr. Kuchle (and others) engaged in fraud, in the procurement of these loans, by providing Ex-Im Bank with fraudulent invoices involving the purchase of equipment and goods in the United States. Yet, these other individuals, who were purportedly involved in the preparation of these documents, have not been charged. Mr. Kuchle intends to vigorously defend himself against these allegations.

3. <u>History of the Defendant and Character.</u> The Defendant was born on October 21, 1971, in Ciudad Juarez, Chihuahua, Mexico, to the union of Reginaldo Kuchle and Maria Luisa Lopez. He is a citizen of the Republic of Mexico. However, Mr. Kuchle first obtained an I-551 border crossing card a number of years ago and then obtained an E-2 Investors Visa. The Government will conceded this fact. Consequently, he has a lawful right to be in the United States pursuant to that E-2 Visa. Mr. Kuchle resides at 1021 South Mesa Hills, Apt. 3901, where he, his wife and two minor children presently reside.[6] Mr. and Mrs. Kuchle's children are United States citizens.

Mr. Kuchle, at age seventeen, was arrested for two misdemeanor offenses, one of which was dismissed and the other was reduced to a disorderly conduct offense resulting in a fine only punishment. His Criminal History Category (if convicted of any of the charged offenses), would be a Category I (under the

Federal Sentencing Guidelines). Mr. Kuchle in his early twenties, began working with his father in the father's boxing promoting business – Promociones del Pueblo – which has grown into an internationally recognized boxing promotion business. They have been integral in promoting boxing events throughout Mexico and the United States and have collaborated with Oscar de la Hoya's boxing promoting company to promote and stage numerous boxing events (see Exhibit "D" attached hereto).

Mr. Kuchle and his father also became involved, in the early 2000's, in real estate development in Juarez, Mexico. In particular, they developed a residential subdivision of approximately thirty (30) houses, twenty-six (26) of which have been sold. The Defendant lived in one (1) of the four (4) remaining houses. However, both he and his father are attempting to "fire alarm" sell these houses due to the violence in Juarez and their desire to join thousands of others who are attempting to legally enter this country and to purchase residential property in which to reside (see Exhibit "E" concerning exodus of many Juarez residents due to the violence and extortion which has gripped that city).

In June of 2006, Mr. Kuchle opened Aroma Restaurant in Juarez, Mexico. He invested heavily in the restaurant. The restaurant became successful. However, its huge success subsequently became problematic to Mr. Kuchle – it drew the attention of extortionists. Extortionists began to demand "protection" payments from Mr. Kuchle. When Mr. Kuchle rebutted these extortion demands, he painfully discovered in June of 2008, that his and four (4) Other restaurants (owned by individuals who apparently had likewise refused to make "protection"

---

[6] His father is residing in a separate condominium at the same complex.

payments) were all burned to the ground in one single evening. This act of terror did not stop the torment Mr. Kuchle had to endure. He received numerous death threats and threats that his wife and/or children would be kidnapped and held for ransom. Both Mr. Kuchle and his father decided to move their business interests and family to the United States. Mr. Kuchle and his father have also relocated the headquarters of their boxing promotion business to El Paso. Mr. Kuchle opened (in December of 2009) Aroma's Restaurant in El Paso on North Mesa Street (See Exhibit "F" attached hereto).

Mr. Kuchle has experienced immediate success in El Paso, much like he did when he opened his Aroma restaurant in Juarez. Much of the success of both restaurants is due to Mr. Kuchle's knowledge, training and experience with the restaurant business and his "hands-on" approach to intricately working, on a day-to-day basis, with every phase of the restaurant.

Mr. Kuchle has no desire to return to Juarez due to the death threats he has received and the concerns he has for the safety of his family. Even before his arrest, he had minimized and/or eliminated his presence in Juarez.

He has also obtained a number of letters from friends and associates, attesting to his good character (see Exhibit "G" attached hereto), notwithstanding his arrest for the present offense. Moreover, evidence of good character is a significant factor in determining whether a condition exists which will reasonably assure a Defendant's appearance. On this issue, the evidence overwhelming militates in favor of the Defendant.

4. <u>Mental and Physical Condition</u>. Despite his present incarceration, Mr. Kuchle's mental and physical condition remains good, and he has no history of treatment for any psychological or mental conditions.

5. <u>Financial Ties</u>. Mr. Kuchle, at the present time, has a strong financial tie to the United States. He has invested approximately $400,000.00 in the Aroma Restaurant on N. Mesa Street and has committed to a three (3) year lease agreement which subjects him to the sum of $258,000.00. His father, who has moved the headquarters of their boxing promotion business from Juarez to El Paso, likewise now has strong financial ties to this community. Moreover, Mr. Kuchle, although heavily involved in his restaurant, is still actively engaged with his father in boxing promotions. Significantly, Mr. Kuchle is agreeable to pledging the inventory, assets and "good will" of his business as collateral for bond in this case. These are certainly strong conditions which, again, militate in favor of Kuchle appearing at all court appearances in the instant case.

6. <u>Family Ties</u>. The Defendant does not deny the existence of family ties to the Republic of Mexico nor to the remaining few financial ties that still exists there. However, the Defendant and his father, both prior to the Defendant's arrest and continuing to this date, are "fire-alarm" selling the remaining assets which Mr. Kuchle still owns or controls in the Republic of Mexico.

The Government, at the detention hearing held before Judge Garney, repeatedly noted that Kuchle had crossed into the United States from the Republic of Mexico, on eleven (11) different occasions (see Exhibit "H" attached hereto) between January 5, 2010 and February 17, 2010 (when he was arrested). The

Defendant would proffer to the Court that on each of these occasions he was in the Republic of Mexico <u>only</u> to either: (a) obtain his E-2 Investor's Visa or (b) returning from Mexico City. Moreover, all of these appearances into the Republic of Mexico were to Mexico City, Distrito Federal, Mexico. He only entered Juarez via air transportation from Mexico City and then would immediately make entry into the United States. It was not to engage in business in Juarez since Mr. Kuchle has no desire to be in that city due to death threats previously made to him and his family (emphasis added). There is a lot of difference in passing through Juarez and <u>living</u> in Juarez.

Mr. Kuchle's children are United States citizens. Mr. and Mrs. Kuchle have a lawful right to live in this country with their E-2 visa.

7. <u>Community Ties</u>. Mr. Kuchle has established strong financial ties to this community. More importantly, he has severed and/or is severing all investment and residential ties to Juarez, Mexico. He has no desire to return to Mexico, either to live or visit. Frankly, he is afraid to go to Juarez.

8. <u>Criminal History</u>. The Defendant, as previously noted, has never been convicted of a felony in this or any other state or against the United States. Except for his conviction of a Class "C" misdemeanor over twenty years ago, he has never before been convicted of a misdemeanor offense.

9. <u>Drug or Alcohol Abuse</u>. The Defendant has no reported history of substance or alcohol abuse addictions or concerns.

10. <u>Record of Previous Court Appearances</u>. Mr. Kuchle made all required court appearances for the misdemeanor arrests in 1989.

11. <u>Employment</u>. The Defendant is not only involved in the boxing promotion business, but is heavily involved in the Aroma Restaurant. That involvement is not only "hands-on" but time consuming. Anyone successful in the restaurant business can attest to one single truth – the owner has to be present at all hours of operation even when the business is not yet open to the public. If not present, the restaurant is doomed to fail.

Although the offense for which Mr. Kuchle is charged is indeed serious in nature, he is unequivocally a most worthy candidate for release.

## V.

### The Defendant has Demonstrated that he is Not a Flight Risk and That There are Conditions of Release Which Will Reasonably Assure his Appearance

The Defendant submits that the evidence, by a preponderance of the evidence standard, demonstrates that Mr. Kuchle is not a flight risk. Moreover, the Defendant submits that the following conditions will reasonably assure his appearance before this Honorable Court:

1. A $100,000.00 corporate surety bond;

2. $250,000.00 in funds contributed by twenty-three (23) individuals who firmly believe in the integrity and good character of the Defendant, can be posted with the court;

3. The assets inventory and "good-will" of Aroma Restaurant, located on North Mesa Street, and valued at $400,000.00 can be pledged as collateral for a bond and are readily seizable if the Defendant should fail to appear for any court proceedings; and

4. Electronic monitoring can be imposed, thereby tracking the Defendant's movements at all times.

Given Mr. Kuchle's amenability to the imposition of any set of restrictions or conditions that this Court deems appropriate to ensure his appearance, and given his extensive investment

to this community, Mr. Kuchle's risk of flight is minimal. Mr. Kuchle intends to appear in Court and defend the charges that have been filed against him.[7]

## VI.

## Prayer

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests that this Honorable Court revoke the United States Magistrate Judge's Order of Detention and enter an order granting conditions of release to him.

Respectfully submitted,

*/s/ Joseph Sib Abraham, Jr./*

JOSEPH (SIB) ABRAHAM, JR.
Attorney for Defendant
State Bar No. 00821000
P.O. Box 512312
El Paso, Texas 79951-0004
Tel. (915)544-7860
Fax (915)532-4768

---

[7] Mr. Kuchle recognizes that if convicted he will probably be deported <u>after</u> serving any sentence of imprisonment. That reality will not deter him from making all court appearances required of him.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 5th day of April, 2010. I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system which will send notification of such filing to the following:

Steven R. Spitzer
Assistant United States Attorney
700 E. San Antonio, Room 200
El Paso, Texas 79901

_____
JOSEPH (SIB) ABRAHAM, JR.